UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD CHRISTOPHER GALKA,   Case No. 11-13089

    Plaintiff,   District Judge Mark A. Goldsmith

v.   Magistrate Judge R. Steven Whalen

WILLIAM COOPER, ET AL.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

On July 18, 2011, Plaintiff Edward Christopher Galka filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging violation of his Fourth and Fourteenth Amendment rights by the William Cooper, the City Manager of Hamtramck, Michigan; the Hamtramck Police Department; and Hamtramck Police Officer Dennis Janowicz. Before the Court is Defendants' Motion to Dismiss [Doc. #13], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE.

**I.   FACTS**

Plaintiff, a former resident of Hamtramck, Michigan, alleges a conspiracy among the Defendants and others to harass him in retaliation for confronting the friend of a police officer who he claims was bothering his date. This harassment culminated in two speeding tickets, one of which was dismissed. Plaintiff also alleges that in March of 2009, he

> "became aware that conversations where (sic) being generated by
> Hamtramck City Officials regarding Plaintiff. The conversations centered

-1-

>as to ways to prevent Plaintiff from being within the City limits because the complaint and because of controversy that Plaintiff initiated regarding the City's day to day operations. Plaintiff was told that the conversations dealt with ways to prevent him from coming from the City knowing he was an active member and donor at the St. Florian Parish and to prevent him from exercising his religious freedoms." *Complaint*, ¶ 16.

As prelude to the traffic tickets, Plaintiff offers the following allegations. In October of 2008, Plaintiff sued James Easton, apparently with regard to Easton's default on a land contract and conversion of Plaintiff's personal property. *Complaint*, ¶¶ 10-13. During a court hearing, Plaintiff informed Judge Paruk of Hamtramck that he was "demeaning and condescending," and that he "was showing a great deal of bias and prejudice toward Plaintiff." According to Plaintiff, Judge Paruk "refused to discuss the matter in chambers and advised Plaintiff to withdraw his case if he felt that he was not being treated fairly." *Id.* ¶ 14. Eventually, Plaintiff did withdraw his case, but in June of 2009, Mr. Easton was awarded $5,500 on a counter-complaint. *Id.* ¶¶ 15, 19. Plaintiff claims that the transcripts of the Easton trial were doctored to remove comments that would have provided the basis for an appeal. *Id.* ¶ 20. Plaintiff filed a complaint with the Hamtramck Police Department, requesting that Easton be charged with perjury. He "was told by the Hamtramck Police Department that after discussions with the City Administrators that no charges would be filed even though the documented evidence existed." *Id.* ¶ 21. Plaintiff claims that after that, he "noticed that he was being sporadically watched by the Hamtramck Police Department during his weekly attendance at St. Florian and occasional church functions." *Id.* ¶ 22.

Plaintiff alleges that On April 10, 2010, he was in a bar in Hamtramck with a Ms. Agota Kowalska. Plaintiff confronted an unnamed individual who was making unwanted advances toward Ms. Kowalska. This "John Doe" individual told Plaintiff that he "would be harassed by friends within the Hamtramck Police Department because of Ms.

Kowaska's rejection." *Id.* ¶ 23.

On April 20, 2010, an unidentified Hamtramck police officer gave Plaintiff a speeding ticket. *Id.* ¶ 24. In May of 2010, Officer Janowicz also issued Plaintiff a speeding ticket. *Id.* ¶¶ 24, 27. The first ticket was dismissed; the Janowicz ticket was not. *Id.* ¶¶ 27, 28. Plaintiff states that the "John Doe" from the bar incident is a "close friend" of Officer Janowicz. Plaintiff knows this because Doe "is observed in Dennis Janowicz Face Book Page drinking with John Doe." *Id.* ¶ 28. In any event, Plaintiff had an informal hearing on the second ticket before a State court magistrate. Plaintiff told the magistrate about the bar incident, and presented evidence purporting to show that his car could not have travelled faster than 25 mph, but the magistrate "found Plaintiff guilty of the offense."[1]

Plaintiff filed a claim of appeal to State Circuit Court. The magistrate denied his request to waive the appeal bond based on indigence. The Circuit Court reversed that decision, and permitted Plaintiff to proceed without paying an appeal bond. *Id.* ¶¶ 28-31. Plaintiff does not describe the ultimate determination of the appeal, other than to state that his "emergency motion for removal" was denied. *Id.* ¶ 33.

Plaintiff alleges Fourth and Fourteenth Amendment violations based on the speeding tickets. He alleges that the City of Hamtramck has an unlawful policy that entrusts police officers with the discretion to dismiss a traffic ticket. According to Plaintiff, this in effect transfers a judicial function to the police, and results in the taking of his money in violation of his rights under the Fourth and Fourteenth Amendments. *Id.* ¶ 36.

---

[1] In Michigan, a speeding ticket is a civil infraction. Therefore, Plaintiff would have been found "responsible," not "guilty."

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[2] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint

---

[2] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

-4-

must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[3] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### B.  Rule 12(b)(1)

Where a claim is frivolous, a court may dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). "[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). *See also Higgins v. Lavine*, 415 U.S. 528, 536-37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (patently frivolous case divests the district court of jurisdiction). A case is frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

---

[3] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

### III. DISCUSSION

Defendants Cooper and Janowicz seek dismissal based on qualified immunity. Defendant City of Hamtramck seeks dismissal based on the theory that under *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), it does not have municipal or *respondeat superior* liability.

Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis. *Id*. 129 S.Ct. at 818.

In *Monell*, the Supreme Court held that under § 1983, municipal liability is not unlimited, and that a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691, 2036. (Emphasis in original). Nevertheless, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id*., 436 U.S. at 690-692. However, before a court even reaches the question of municipal liability, it must first be shown that

-6-

there is an underlying constitutional violation. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

Thus, whether analyzed as an issue of qualified immunity or *Monell*/municipal liability, a complaint must be dismissed if there is no underlying violation of a plaintiff's constitutional rights.

Plaintiff's Fourth and Fourteenth Amendment claims are nothing short of bizarre. At his informal hearing on the second ticket, he apparently requested the magistrate to ask Officer Janowicz if he would dismiss ("abdicate") the ticket. Janowicz refused to do so. At that point, according to Plaintiff, the magistrate abandoned his judicial role and the end result, pursuant to City policy, was the "denial of procedural due process" and the unconstitutional seizure of his money by way of the traffic fine. At least that is what Plaintiff appears to argue. In his response to this motion [Doc. #20], which is not any less muddled and confusing than his complaint, Plaintiff makes the argument as follows, at pp. 10-11:

> "Plaintiff is offered abdication on the first ticket by another officer, but not offered abdication on the second ticket by Officer Janowicz. The City initiated the policy to grant abdication to its Police Officers is based on the brokered deal with the Police Department. It allows the Police Officer to write the ticket and retrieve money along with alleged parking tickets fines without ever seeing a Magistrate or the City Attorney based on their abdication authority. The abdication authoriity by a Police Officer granted by the City policy literally turns the due process procedure within the Court onto its head. Once the refusal for the abdication of the ticke by the Police Officer, or the Defendant does not want to pay for the traffic tickets, the Defendant is referred to the Magistrate. In the presnet case the Police officer specifically stated that Galka refused a plea which is untrue to the facts. Plaintiff was never offered "Abdication" by Oficer Janowicz. Plaintiff stated on record and requested the Magistrate to instruct the officer to offer the abdication and the Magistrate and Officer Janowicz refused. Once the Magistrate questions the officer refusal to abdicate the ticket,he is

>questioning the officer judicial authority that is granted thru the Cities policy. The Magistrate function is to be a neutral judicial officer and to decipher the facts between the parties. In the present case, the Magistrate loses his neutrality because he is questioning judicial authority of the police officer in which a decision has already been regarding the ticket and a defendant refusal to pay parking tickets. The Magistrate is functioning as a quazi-appellant judicial officer when he questions the reason why the ticket was not abdicated and not as neutral third party which is to decipher the facts between the parties. It is the basis for procedural due process that it judicial officer be unbiased so that it may render an opinion based on the facts of the situation. In the present case, it was the prejudicial decision of the Magistrate to uphold the officer's decision not to abdicate the ticket and enter a guilty plea on the speeding ticket and even the parking tickets. The City never even provided any procedural due process regarding traffic tickets and Plaintiff only became aware of the parking tickets prior to the hearing by Officer Janowicz."

First of all, police officers are given broad discretion to issue traffic citations or to *not* issue traffic citations. *See People v. Davis*, 408 Mich. 255, 296, 290 N.W.2d 366, 378 (1980) ("[P]olice officers enjoy a measure of discretion in charging. Not every offender is taken to the station house, nor is every citation or traffic ticket, if issued at all, written for the full misconduct which the officer observed"); *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 799 (8th Cir. 2009)("A police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion"); *Enquist v. Oregon Dept. of Agriculture*, 553, 591, 603 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008)("There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments")(citing traffic tickets as an example). Similarly, police officers have the discretion to withdraw a ticket, or recommend withdrawal to the prosecuting agency. Plaintiff caught a break when the first ticket was dismissed, but he did not have a right to have the second one dismissed. Nor could the magistrate order the officer to "abdicate" the ticket without offending the concept of separation of powers.

The Plaintiff was provided with a hearing to contest the second ticket. He concedes

-8-

that he presented evidence and argument at the hearing. Procedural due process, which the Plaintiff claims was violated, "requires that when a State seeks to terminate [a protected] interest ... it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Bd. of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (quoting *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (alteration in original)). Because Plaintiff received notice and an opportunity to be heard, he was afforded all the process that was due.[4] The right to due process does not imply the right to win.[5]

The Fourth Amendment protects against unreasonable searches and seizures. Plaintiff has cited no authority for the proposition that a fine for a civil traffic infraction, following a contested hearing, is unreasonable under the Fourth Amendment. Indeed, such an argument is absurd on its face.

Although not raised by the Defendants, I note that Plaintiff's complaint is also barred under the Rooker-Feldman doctrine.[6] Rooker-Feldman is based on the principle

---

[4] Plaintiff also criticizes the magistrate for not waiving the appeal bond, apparently suggesting that this shows the magistrate's bias. M.C.R. 4.101(H)(2)(a) provides that a "defendant who appeals must post with the district court, at the time the appeal is taken, a bond equal to the fine and costs imposed." As Defendants point out, M.C.R. 3.604(L) provides for the *discretionary* waiver of appeal bond. The magistrate's denial of the waiver was an unremarkable exercise of judicial discretion which was reversed on review by the Circuit Court. Moreover, because the Circuit Court permitted Plaintiff to appeal without posting bond, he has suffered no damages as the result of the magistrate's ruling.

[5] In his response, Plaintiff has submitted a "WXYZ News Special Investigation Report," which discusses a so-called "speed trap" in Hamtramck. The Report states, "Under state law, all Michigan cities are supposed to justify their speed limits either with a speed study or counting access points along the road," and notes that "Hamtramck has done neither." Even assuming that the Court may properly consider this news report, Hamtramck's alleged violation of state law on speed limits does not give rise to any federally protected right.

[6] The name derives from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of*

that a federal district court does not have appellate jurisdiction to review a state court judgment; that power is reserved to the Supreme Court under 28 U.S.C. §1257. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court explained the doctrine as follows:

> "The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.*, 544 U.S. at 284.

In *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005), the Second Circuit explained that the application of Rooker-Feldman depends on whether the source of the Plaintiff's claimed injury is the state court judgment itself. If it is, then Rooker-Feldman precludes the federal action:

> "The key to resolving this uncertainty lies in the second substantive *Rooker-Feldman* requirement: that federal plaintiffs are not subject to the *Rooker-Feldman* bar unless they *complain of an injury* caused by a state judgment. Indeed, this is the core requirement from which the others derive; focusing on it helps clarify when the doctrine applies.
>
> "...[T]his requirement explains why a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court. Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments."

In the present case, the injuries that Plaintiff claims were caused by the state traffic court case that resulted in a fine. In effect, he seeks to relitigate his speeding ticket. It is apparent that Plaintiff is a classic "state court loser" who now seeks, in effect, to have this

---

*Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Court review a state court judgment that is not to his liking.

This complaint is also barred by collateral estoppel. "Collateral estoppel bars relitigation of an issue that was actually raised and litigated in a prior proceeding and that the determination of was essential to the final judgment." *In re Masri*, 2012 WL 2527059, *2 (E.D.Mich. 2012)(citing *Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981)). At ¶ 28 of his complaint, Plaintiff alleges as follows:

> "Later that morning, an Informal Hearing was held whereas Plaintiff advised the Magistrate of the situation involving John Doe at the New Dodge Bar, the vehicle documented problem, and additionally, the City Managers involvement. The magistrate prejudice to Plaintiff refused to accept any information presented and found Plaintiff guilty of the offense."

Thus, the very issues that Plaintiff raises in this Court–that Officer Janowicz stopped him not because he was speeding, but in retaliation for the bar incident, that his car was incapable of exceeding the speed limit, and the alleged involvement of City Manager Cooper and the City's alleged policy–were raised and litigated in the traffic court case.

And to the extent that Plaintiff would claim that he is now raising distinct constitutional issues that were not raised in state court, those issues would be subject to dismissal under the doctrine of *res judicata*. Michigan has adopted a broad application of the doctrine of res judicata which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not. *Limbach v. Oakland County Bd of County Road Comm'r*, 226 Mich. App. 389, 396, 573 N.W.2d 336 (1997).[7]

---

[7] Application of the doctrine of res judicata in Michigan requires that (1) the first action be decided on its merits, (2) the matter being litigated in the second case was or could have been resolved in the first case, and (3) both actions involved the same parties

The Plaintiff is making a federal case out of a speeding ticket.[8] Not only is dismissal appropriate for the reasons set forth in the Defendants' motion, but this case is patently frivolous, and thus subject to dismissal under Rule 12(b)(1) as well.

### IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion to Dismiss [Doc. #13] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE, pursuant to both Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(b)(1).

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*

---

or their privies. *ABB Paint Finishing, Inc. v. National Union Fire Ins.*, 223 Mich. App. 559, 562, 567 N.W.2d 456 (1997) (1997).  "The test for determining whether two claims are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two claims," *Huggett v. Dep't of Natural Resources*, 232 Mich. App. 188, 197, 590 N.W.2d 747 (1998), not whether the grounds asserted for relief are the same. *Jones v. State Farm Ins. Co.*, 202 Mich. App. 393, 401, 509 N.W.2d 829 (1993), *mod'f on other grounds*, *Patterson v. Kleiman*, 447 Mich. 429, 433 n.3 (1994).

[8] Plaintiff is a frequent litigator in this Court. *See Galka v. Booker*, No. 07-12271; *Galka v. Caruso*, No. 07-13764; *Galka v. Cole*, 07-13575; *Galka v. Caruso*, 08-13800 (successive habeas petition); *Galka v. Cole*, 08-13321*; Galka v. Cole*, 10-11961(in this case, Plaintiff was restrained from filing any further civil complaints related to his conviction, without first obtaining leave of the Court); *Galka v. Grover*, 09-13392; *Galka v. Grover*, 11-10271.

*231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

     Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/ R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Date: August 20, 2012

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 20, 2012.

| | |
|---|---|
| Christopher Galka<br>8583 Frederick Drive<br>Washington Township, 48094 | s/Johnetta M. Curry-Williams<br>Case Manager |