UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GALKA,

       Plaintiff,                           Civil Action No. 11-13089

vs.                                         HON. MARK A. GOLDSMITH

WILLIAM COOPER, et al.,

       Defendants.
_____/

## OPINION AND ORDER REVOKING PLAINTIFF'S IN FORMA PAUPERIS STATUS (DKT. 3) AND IMPOSING SANCTIONS

This matter is presently before the Court as a result of several orders to show cause issued to Plaintiff (Dkts. 30, 37, 39 and 42). As discussed in detail below, the Court ordered Plaintiff to show cause why he should not be sanctioned for apparent inconsistencies between statements in his in forma pauperis (IFP) application and statements contained in another filing he made with the Court. For the reasons set forth below, the Court revokes Plaintiff's IFP status and sanctions him for having made material misstatements on his IFP application and for his additional bad-faith conduct of disobeying the Court's orders.

This matter has its roots in Plaintiff's application to proceed IFP, which he filed with his complaint on July 18, 2011.[1] IFP Application (Dkt. 2). In his IFP application, Plaintiff stated

---

[1] By statute, a court may authorize an individual to initiate a lawsuit by proceeding in forma pauperis (IFP), so that the individual does not have to prepay the filing fee. See 28 U.S.C. § 1915(a). To obtain IFP status, individuals must submit an affidavit attesting to their poverty. Id. The IFP affidavit is a simple form asking an individual about his or her financial resources. Mullins v. Hallmark Data Sys., LLC, 511 F. Supp. 2d 928, 942 (N.D. Ill. 2007) ("The IFP forms [sic] clearly and unambiguously asks questions in plain English on a form designed for use by non-lawyers."). Of course, proceeding IFP "is a privilege, not a right." Camp v. Oliver, 798 F.2d 434, 437 (11th Cir. 1986).

unambiguously and without qualification that he had not received money from any sources in the twelve months preceding the filing of his IFP application. Id. at 1. Plaintiff also stated unambiguously and without qualification that he did not own any real property. Id. at 2. The Court granted Plaintiff's application to proceed IFP based, in part, on these representations. 9/2/2011 Order (Dkt. 3).

Plaintiff's IFP status remained unremarkable until Plaintiff objected to the August 20, 2012 Report and Recommendation (R&R) of Magistrate Judge R. Steven Whalen (Dkt. 22), recommending dismissal of Plaintiff's complaint.[2] In his objections to the R&R, Plaintiff stated that he was a "successful business owner" and a "homeowner." Pl.'s Objs. at 5 (Dkt. 25). In accepting and adopting the R&R, the Court noted the blatant inconsistency between Plaintiff's statement in his objections and his claim of poverty in his IFP application. 9/21/12 Order (Dkt. 27) at 2 n.2. The Court stated that an appropriate order to show cause would issue, requiring Plaintiff to explain his inconsistent statements. Id.

The Court then issued its first order to show cause on October 10, 2012, ordering Plaintiff to: (1) show cause why the Court should not impose sanctions for Plaintiff's apparent

---

[2] The dismissal of Plaintiff's complaint in this action follows in the wake of numerous other complaints of Plaintiff dismissed by other judges of this Court since 2007. See Galka v. Booker, No. 07-12271 (E.D. Mich. 2007) (Friedman, J.) (habeas relief denied); Galka v. Caruso, No. 07-13764 (E.D. Mich. 2008) (Roberts, J.) (granting summary judgment on civil rights claims, noting that they "lack[] even arguable merit"); Galka v. United States Dep't of Agric., No. 12-10634 (E.D. Mich. 2012) (Steeh, J.) (dismissing mortgage foreclosure-related claims); Galka v. Cole, No. 07-13575 (E.D. Mich. 2007) (Gadola, J.) (revoking IFP status and dismissing case without prejudice); Galka v. Caruso, No. 08-13800 (E.D. Mich. 2009) (Lawson, J.) (denying habeas relief and transferring petition to Sixth Circuit as a second/successive habeas petition); Galka v. Cole, No. 10-11961 (E.D. Mich. 2011) (Hood, J.) (granting dismissal of civil rights claims and barring Galka from filing any additional lawsuits related to his criminal conviction); Galka v. Cole, No. 08-13321 (E.D. Mich. 2008) (Hood, J.) (summarily dismissing claims pursuant to Heck v. Humphrey, 512 U.S. 477 (1994)); Galka v. Grover, No. 09-13392 (E.D. Mich. 2010) (Steeh, J.) (claims dismissed by stipulation); Galka v. Grover, No. 11-10271 (E.D. Mich. 2011) (Steeh, J.) (dismissing Galka's numerous claims for various reasons).

misrepresentation of his financial status in his IFP application, and (2) appear in person before the Court on November 7, 2012 for a hearing on the show-cause order. 10/10/12 Order (Dkt. 29). The Court subsequently adjourned the hearing date to November 28, 2012. 10/15/12 Order (Dkt. 30). Plaintiff filed a motion on October 17, 2012, seeking more time to file a written response and requesting adjournment of the hearing until the Court could review the response. Pl.'s Mot. (Dkt. 31). Plaintiff stated that he wanted until November 4, 2012 to file his response to the Court's show-cause order. Id. at 2. However, before the Court ruled on the motion, Plaintiff filed a response to the Court's order to show cause (Dkt. 32). After reviewing the response, the Court denied Plaintiff's request to adjourn the November 28 hearing. 11/15/12 Order (Dkt. 36). Plaintiff inexplicably failed to appear for this hearing.

On November 30, 2012, the Court issued a second order to show cause, ordering Plaintiff to appear in person on December 10, 2012. 11/30/12 Order (Dkt. 37). Plaintiff did not appear for this hearing either. Approximately three hours prior to the scheduled hearing, Plaintiff filed a motion to adjourn the hearing (Dkt. 38), stating that his brother had passed away on November 17, 2012, that the funeral was held on November 21-22, 2012, and that he could not attend the scheduled hearing on December 10, 2012 because he needed to attend an ash-spreading ceremony on that date for his late brother. Plaintiff requested that the Court adjourn the December 10 hearing, noting that he would be "available at any time other than 17 December 2012." Pl.'s Mot. at 1 (Dkt. 38).

In response to this motion, the Court issued a third order to show cause on December 11, 2012, directing Plaintiff to appear on December 18, 2012 (i.e., a date "other than 17 December 2012," pursuant to Plaintiff's request) to address why he failed to appear on November 28 – a failure Plaintiff did not explain in his motion – and why he should not be sanctioned for

3

misrepresenting facts to the Court in his IFP application. 12/11/12 Order (Dkt. 39). Given Plaintiff's failure to seek a timely adjournment of the December 10 hearing or to explain his failure to appear on November 28, the Court warned Plaintiff that failure to appear on December 18 would result in the issuance of a warrant for his arrest and the possible initiation of criminal contempt proceedings.

Although the Court had granted Plaintiff's request to adjourn the hearing to a more convenient date and had selected a date in accordance with that request, Plaintiff called the Court's case manager on December 14, 2012 and declared that the Court could not proceed with the December 18 hearing because the case was "closed." Despite the case manager's warning to Plaintiff that he must appear at the hearing, Plaintiff failed to appear on December 18. Instead, approximately three hours before the scheduled hearing, Plaintiff filed a "Motion for Dismissal of the Court's Show Cause Hearing" (Dkt. 41).[3]

In attempting to "dismiss" the show-cause hearing, Plaintiff frivolously argued that the Court lacked jurisdiction to investigate his IFP status or impose sanctions because the case was closed and his complaint had been dismissed. The Court denied the motion and issued a fourth order to show cause. 1/9/13 Order (Dkt. 42). The fourth order to show cause also set a fourth hearing date, January 24, 2013, and again warned Plaintiff that his failure to appear would prompt the re-issuance of an arrest warrant.

Finally, after four months and four orders to show cause, Plaintiff appeared as ordered on January 24, 2013. The Court placed Plaintiff under oath and asked him various questions aimed

---

[3] Because Plaintiff filed a paper copy of his motion on the morning of December 18, 2012, rather than an electronic version, the motion did not appear on the electronic docket until the following morning. In the interim, the Court had issued a warrant for Plaintiff's arrest (Dkt. 40) on the afternoon of December 18 in light of Plaintiff's failure to appear that afternoon. Upon learning of the filing, the Court immediately recalled the warrant, although the motion, on its face, was frivolous.

at clarifying the inconsistencies between his IFP application and his objections to the R&R. Plaintiff's answers confirm that he misrepresented his financial affairs in his IFP application.

Plaintiff falsely claimed in his IFP application that he had no income from any source for the 12-month period preceding the submission of the application on July 18, 2011. This was false because Plaintiff testified at the hearing that he had received $16,969 in unemployment compensation in 2011, paid at the rate of $762 every two weeks throughout that year. 1/24/13 Hr'g Tr. at 4-6 (Dkt. 44). This income was set out in Plaintiff's 2011 tax return, filed with the IRS, an excerpt of which was attached to Plaintiff's response to the first show-cause order (Dkt. 32). His testimony and return directly contradict his no-income statement in the IFP application.

Plaintiff also failed to disclose in his IFP application gross income from his business. Schedule C to his tax return sets forth $6,951.23 as gross business income for his antique furniture resale business. Although Plaintiff initially testified that the tax return was accurate, see Tr. at 4, he later claimed that it was inaccurate as to business income, on the theory that the $6,591.23 did not, in fact, constitute income, but was only a transfer of unemployment compensation funds to the business. Tr. at 6-7. The Court finds Plaintiff's convenient re-characterization of his business income as not credible. It seems unlikely that a highly intelligent person, such as Plaintiff, would mistakenly view a mere internal transfer of funds from himself to his DBA-business as "income." Furthermore, the figure is a precise and unusual amount – more reflective of a receipt or aggregation of receipts from sales, than the internal transfer of funds, which would more likely be a round number.

In addition, the Court rejects Plaintiff's testimony regarding his business income because he was clearly untruthful regarding other statements he made under oath to the Court at the hearing. Specifically, he dissembled when trying to explain why he had not shown up for earlier

hearing dates scheduled by the Court. He testified that he was not able to attend the December 18 hearing because there was an ash-spreading ceremony for his late brother. Tr. at 19. Yet in his motion to adjourn the December 10, 2012 hearing, he stated that he could not attend the hearing on that day because the second of two ash-spreading ceremonies (the first having been performed at the funeral on November 20-21) was to be performed on December 10. Plaintiff also dissembled regarding his failure to attend the November 28 hearing. He testified at the hearing that he did not show up because he was waiting for a ruling on his request for an adjournment. Tr. at 17. Yet the Court had issued an order denying that request and mailed it to him on November 15, 2012. See Dkt. 36. Accordingly, the Court rejects Plaintiff's effort to explain his failure to list his business income on his IFP application.

Still another misrepresentation in the IFP application was Plaintiff's statement that he owned no real property. At the hearing, Plaintiff acknowledged that, at the time he submitted his IFP application, he owned his residence. Tr. at 9. He tried to explain away the falsehood by stating that he knew he would be losing the house at a foreclosure sale that was to take place some 30 days later on August 18, 2011. However, Plaintiff understood he had an interest in the house at the time he submitted his IFP application. Id. Indeed, in his objection to the R&R, he claimed to be a "homeowner," and at the hearing he testified that he has remained in the home and has continued to contest the foreclosure through court proceedings that were still on-going as of the date of the hearing. Tr. at 7-11.

Given the evidence cited above, the Court concludes that Plaintiff fraudulently obtained his IFP status in the present case by intentionally and materially misrepresenting his financial condition. In sum, Plaintiff lied in his IFP application by attesting that he had no income from any source for the 12-month period preceding the submission of the application on July 18, 2011.

6

He also lied in his IFP application by saying he owned no real property. Furthermore, the Court finds that Plaintiff was deceitful in explaining his failure to appear at the November 28, 2012 and December 18, 2012 show cause hearings before this Court, and that he willfully disobeyed court orders to appear on those dates. Without belaboring the obvious, the Court finds that Plaintiff acted in bad faith, and that his conduct is intolerable by any standard.[4]

Because of Plaintiff's bad-faith conduct – both in fraudulently misrepresenting his financial status on this IFP application and his failure to obey the Court's orders to appear – the Court may exercise its inherent authority to impose an appropriate sanction. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (courts have "inherent power to impose sanctions for . . . bad-faith conduct" of litigants); Youn v. Track, Inc., 324 F.3d 409, 420 (6th Cir. 2003) ("A district court has the inherent power to sanction a party when that party exhibits bad faith, including the party's refusal to comply with the court's orders."); Dell, Inc. v. Elles, No. 07-2082, 2008 WL 4613978, at *2 (6th Cir. June 10, 2008) ("The imposition of inherent power sanctions requires a finding of bad faith or conduct tantamount to bad faith.") (citations and quotations omitted).

In the particular circumstances of misrepresentation of financial status in an IFP application, courts are authorized to impose a variety of sanctions. They may dismiss a case outright and/or revoke an individual's IFP status. See 28 U.S.C. § 1915(e)(2)(A) ("court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue"); Assaad-Faltas v. Univ. of S.C., 971 F. Supp. 985 (D.S.C. 1997) (revoking IFP status in four cases pending before the Fourth Circuit). See also Romesburg v. Trickey, 908 F.2d 258, 259-

---

[4] At the hearing, Plaintiff offered to amend his IFP application to correct the misrepresentations. Tr. at 5, 11-12, 21-22. However, correction of the misrepresentations now would not change the fact that Plaintiff had lied on his IFP application.

7

260 (8th Cir. 1990) (affirming revocation of IFP status and dismissal of complaint with prejudice where plaintiff failed to disclose ownership of property in IFP application); Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983) (affirming district court's decision revoking plaintiff's IFP status for making material misrepresentations regarding financial condition in financial affidavit); Thompson v. Carlson, 705 F.2d 868, 869 (6th Cir. 1983) (affirming district court's dismissal of lawsuit with prejudice after plaintiff misrepresented his financial status in IFP application).

In cases with conduct analogous to Plaintiff's conduct in this case, courts have not hesitated to require the offending party to pay the filing fee of the action that the IFP plaintiff had improperly evaded. Christensen v. Bristol-Myers Co., No. 86-0183, 1990 WL 6554, at *2 (S.D.N.Y. Jan. 22, 1990) (requiring plaintiff who intentionally misrepresented finances on IFP application to pay the filing fee); Moreland v. Hu-Friedy Mfg. Co., No. 95-4373, 1997 WL 543066, at *2-*5 (N.D. Ill. Aug. 29, 1997) (same). See also Basey v. Mooneyham, 172 F. App'x 582, 584 (5th Cir. 2006) (imposing sanction of $255, the appellate filing fee cost for plaintiff's frivolous appeal).

Where litigants, like Plaintiff, have failed to appear for court-ordered events, courts have imposed fines for such disobedience. Dietrich v. Sun Exploration and Prod. Co., 21 F.3d 427, at *6 (6th Cir. 1994) (affirming imposition of sanctions for noncompliance with court orders, including failures to appear at scheduled court conferences); Bass v. Jostens, Inc., 71 F.3d 237, 243 (6th Cir. 1995) (affirming sanctions imposed upon plaintiff for failure to appear at court-ordered deposition); Dell, 2008 WL 4613978, at *2-*3 (affirming sanctions for bad-faith conduct, including failures to appear at court-ordered depositions and show cause hearings). See

also Bills v. United States, 11 F. App'x 342 (4th Cir. 2001) (affirming fine of $500 for attorney's failure to appear at sentencing of his client).

To make the imposition of fines meaningful, courts may require payment of fines as a condition to filing a new action. See, e.g., McDonald v. Cooper, 471 F. App'x 494 (6th Cir. 2012) (holding that district court did not abuse its discretion in barring plaintiff from filing future civil cases until he paid a $1,000 sanction); Moore v. Hillman, Nos. 06-43 and 06-45, 2006 WL 1313880 (W.D. Mich. May 12, 2006) (requiring plaintiff to pay the filing fee for a case "before regaining his eligibility to file future lawsuits in this court on an in forma pauperis basis").

Lastly, courts have required parties or attorneys to provide notice of their sanctioned conduct to other courts or other interested parties. Mick Haig Prods. E.K. v. Does 1-670, 687 F.3d 649, 651-652 (5th Cir. 2012) (affirming sanctions requiring attorney to (1) serve copy of sanctions order upon "every person or entity with whom he communicated for any purpose" in the case; and (2) to file sanctions order "in every currently-ongoing proceeding in which he represents a party, pending in any court in the United States, federal or state"); Keira v. United States, 400 F. App'x 477, 478-479 (11th Cir. 2010) (affirming dismissal of action where plaintiff failed to obey contempt order requiring him file a copy of the contempt order with a new lawsuit); Chow v. City of New York, No. 09-1019, 2010 WL 2103046, at *5 (E.D.N.Y. May 25, 2010) (plaintiffs ordered to serve a copy of sanctions order and magistrate judge's memorandum and order "on their adversary in any civil litigation in which either of them become a party for the next five years").

Given the extreme nature of Plaintiff's bad-faith conduct – involving both fraudulent misrepresentations and willful failure to appear in court – the Court is constrained to conclude that significant sanctions are necessary to vindicate the Court's authority and register its firm

9

rejection of Plaintiff's misconduct. Guided by the principle that "[i]n choosing sanctions, we must employ 'the least possible power adequate to the end proposed,'" Hyland v. Stevens, 37 F. App'x 770, 771 (6th Cir. 2002) (quoting Spallone v. United States, 493 U.S. 265, 280 (1990)), the Court concludes that lesser sanctions than those set forth below are not likely to be effective in deterring Plaintiff from future misconduct. Accordingly, the Court orders the following:

1. Plaintiff's IFP status is revoked.

2. Plaintiff shall pay by May 10, 2013 the $350 filing fee that he fraudulently evaded at the onset of this litigation.

3. Plaintiff shall pay a fine of $500 to the Clerk of the Court by May 10, 2013 for his failure to appear at the November 28, 2012 and December 18, 2012 hearings.

4. Plaintiff may not file any new action in this Court without first having paid the amounts ordered in paragraphs 2 and 3 above.

5. In any action Plaintiff may file in this Court in the next ten years, he shall file a copy of this Opinion and Order at the time he initiates the case and serve a copy of this order on opposing parties with service of the complaint.

SO ORDERED.

Dated: April 10, 2013             s/Mark A. Goldsmith
       Flint, Michigan            MARK A. GOLDSMITH
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 10, 2013.

                                        s/Deborah J. Goltz
                                        DEBORAH J. GOLTZ
                                        Case Manager